Morris E. Spector, J.
This is a proceeding under article 79 of the Civil Practice Act whereby petitioners seek an order directing the respondents “ to accept and permit the functioning of J. Norman Lewis, Esq., as counsel for petitioners as members of the Pension Committee [of the Major League Baseball Players’ Pension Plan], and as co-counsel for the Pension Committee ”.
Respondents have now moved for judgment on the pleadings. The underlying facts are not in dispute; they are as follows: Petitioners are the player representatives on the Pension Committee and respondents are the owner representatives. The committee was established pursuant to a memorandum agreement of March 12, 1954, and two agreements of October 1, 1954, between representatives of the major league baseball clubs and representatives of the major league baseball players, relating to pension and other welfare benefits for the players.
Pursuant to these agreements, which required the Pension Committee to study the existing pension plan for the players and propose revisions, there was adopted, effective April 1,1957, the Major League Baseball Players Benefit Plan. Section 2.1 of the plan requires that a trust be established with the First National City Bank of New York as trustee to hold all assets under the plan. Disbursements are to be made by the trustee only upon written instructions from the Pension Committee.
Under section 2.7 of the plan, concurring votes of three of the Pension Committee members are required for decisions of the committee, except as to amendments of the plan, which section 16 of the plan requires to be adopted unanimously. Section 2.8 provides for arbitration in case of deadlocks.
In 1955, the Pension Committee unanimously appointed White & Case as counsel. It was intended by both the player and the owner representatives that White & Case should be “ independent counsel ’ ’.
This proceeding arose when the Pension Committee deadlocked 2 to 2 on a motion by the player members to make Lewis co-counsel of the Pension Committee. The player members thereupon suggested that the arbitration provision was applicable, but took no steps to invoke it when the owner representatives produced an opinion by counsel (other than White & Case) that the issue was not arbitrable.' Instead, they brought this proceeding.
*601 The respondents’ motion for judgment on the pleadings is based on two grounds: 1. That this case is not within the scope of article 79, and 2. That petitioners are not entitled to the relief sought.
As to the first of these contentions, I do not understand petitioners to argue that the Pension Plan is an express trust or that the members of the Pension Committee are trustees of an express trust. In both their memorandum and their supplemental memorandum, they point to the trust established by the plan with the First National City Bank of New York as the express trust which brings this case under article 79. In this connection it may be noted that section 5 of the trust permits the trustee “to consult with counsel, who may be counsel to the Committee ” and the trustee “ shall be fully protected in acting on the advice of counsel ’ ’.
Article 79 was established to meet the need for an expeditious means of dealing in the Supreme Court with matters involving trust administration. (See Ninth Annual Report of N. Y. Judicial Council, 1943, p. 307.) The difficulties in this field which led to article 79 are set forth in Judd, “ Some phases of Practice in Inter Yivos Trust Accounting in New York” (42 Col. L. Rev. 207 [1942]), and Mr. Judd subsequently drafted article 79 for the Council. In the light of this history, the courts have consistently declined to permit article 79 to be used for matters beyond those indicated by the Judicial Council report. (E.g., Matter of Reilly, 17 Misc 2d 1077 [Supreme Ct. N. Y. County, 1956], affd. without opinion 3 A D 2d 1001, motion for leave to appeal denied 4 A D 2d 833 [1st Dept., 1957]; Matter of Burton, 132 N. Y. S. 2d 563 [Supreme Ct. N. Y. County, 1954]; Matter of Norwood v. New York Trust Co., 92 N. Y. S. 2d 185 [Supreme Ct. N. Y. County, 1949].)
The language of the court in Matter of Reilly (sufra, 1079) is particularly apt. In that case it was sought in an article 79 proceeding to set aside a trust as in fraud of a widow’s right of election and because of incompetence. The court said: ‘ ‘ the issues thus tendered would arise normally as in all matters of contract in adversary proceedings in plenary suits which clearly is not the purpose and function of article 79, promulgated for expeditious accounting and determination of issues strictly of construction.”
It therefore seems to me that this controversy is too remote from the express trust to warrant the invocation of article 79. The remoteness is emphasized by the fact that it was not even thought necessary to make the trustee a party to this proceeding. Article 79 was intended to deal with matters that *602 directly involve administration of a trust, and not matters that only very peripherally affect a trust.
But if I am wrong as to this, I believe respondents nonetheless must prevail.
When, by agreement, parties deliberately place themselves in a potential deadlock situation, they do so because they believe that this is the best bargain they can obtain for the protection of their interests. Under such circumstances the courts may not redraw their arrangement. (Sterling Ind. v. Ball Bearing Pen Corp., 298 N. Y. 483, 491 [1949].) In the Sterling case each of the parties had two representatives on a four-man board of directors, and the Court of Appeals held that the president of the corporation could not bring an action in the corporation’s name when the board was evenly divided as to whether the action should be authorized.
The petitioners assert that they must have cocounsel in order to have access to agreements that the Commissioner of Baseball is considering as to radio and television rights to the World Series and the All-Star G-ame. These agreements constitute the primary source of revenue for the Pension Plan, but the Commissioner has thus far refused to give the player representatives access to them.
The petitioners also assert that White & Case are not independent because they have at times done some legal work for some club owners, on non-baseball matters, and that this fact was not known to the player representatives when they acquiesced in the choice of White & Case as counsel.
However, I am not here called on. to decide whether the player representatives are entitled to access to the World Series and All-Star Game television and radio contracts, or whether they are entitled to participate in the negotiation of them. Nor am I called on to decide what the status of White & Case is. Finally, I am not called on to decide whether the present controversy is arbitrable. The only question here is whether, when the parties have agreed to require concurrence by three of the four members of the committee before any action is taken, this court may rewrite their agreement to require concurrence by only two members. I hold that this court may not do so.
Accordingly, the petition is dismissed.